**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-289 (RDM)** |
| **v.** | : | |
| | : | |
| **PHILLIP C. VOGEL, II, a/k/a "Flip,"** | : | |
| **DEBRA J. MAIMONE,** | : | |
| | : | |
| **Defendants** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Phillip C. Vogel, II, to five months' incarceration, 12 months of supervised release, 60 hours of community service, and $1,806.00 in restitution. Further, the government requests that this Court sentence Defendant Debra J. Maimone to three 3 months' incarceration, 12 months of supervised release, 60 hours of community service, and $1,806.00 in restitution.[1] The government's recommended sentences of incarceration are at the midpoint of the defendants' respective guideline ranges.

### I.   Introduction

Defendant Phillip C. Vogel, II, a/k/a "Flip" ("Vogel") age 35, unemployed, participated in the January 6, 2021 attack on the United States Capitol with his codefendant and fiance, Debra J. Maimone ("Maimone"), age 30, a self-employed businesswoman. This was a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count,

---

[1] The $1,806 of restution for each defendant includes $1,306 that is jointly and severally due from both defendants as well as $500 that is due from each defendant.

threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[2] But for Vogel's and Maimone's actions alongside so many others, the riot likely would have failed.

Defendants Vogel and Maimone each pleaded guilty to one count of violating 18 U.S.C. §§ 641 and 2, aiding and abetting the theft of property valued at less than $1,000. As explained herein, a sentence of imprisonment and supervised release is appropriate in this case because Vogel and Maimone participated in a riot that succeeded in halting the Congressional certification; stole hundreds of dollars of personal protective equipment ("PPE") from at least three different areas in the Capitol; entered the Senate Gallery; filmed and posted a video of rioters and Maimone in the Crypt; and wore face masks in part to conceal their identities. In addition, Maimone filmed a violent confrontation with police at the Rotunda door and, after the riot, she expressed support for rioters on social media, while Vogel glorified the rioters for "taking a stand" on social media after the riot.

The Court must also consider that Vogel's and Maimone's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Vogel's and Maimone's conduct makes a term of incarceration both necessary and appropriate in this case.

---

[2] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

## II. Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 58 (Statement of Offense), at ¶¶ 1-7.

### *Defendants' Role in the January 6, 2021 Attack on the Capitol*

On or about January 6, 2021, Vogel and Maimone traveled to Washington, D.C., from their home in Pennsylvania to attend the "Stop the Steal" rally. After attending the former President's rally, they walked to the Capitol  and made their way with other rioters to the Upper West Terrace. They approached the Senate Wing Door, which was unguarded and crowded with rioters. At about 2:26 p.m., Vogel and Maimone illegally entered the Capitol through the Senate Wing Door, approximately 13 minutes after the initial breach of thatdoor by rioters. *See* Figure 1 (Exhibit A). As they entered the building, they passed through a door with visibly smashed windows and over broken glass that was scattered on the floor. Sirens were blaring.

When they entered the Capitol, Vogel was wearing a gray stocking cap, black sweatshirt, and an American flag face mask. Maimone was wearing a brown ballcap with a faded American flag, a dark coat, an an American flag face mask. Vogel pulled up his mask to cover his face.



*Figure 1*
*Screen shot from United States Capitol Police ("USCP") Surveillance Footage (CCTV), at timestamp 2:25:56 p.m., showing Vogel (red circle) and Maimone (yellow circle) entering the Capitol Building through the Senate Wing Door*

Vogel and Maimone turned right and walked into the Crypt. There, Vogel recorded rioters and Maimone on his cell phone. Maimone pulled down her face mask to exclaim "It's amazing," and Vogel admonished her, stating: "Put your mask on. I don't want them to see you." Later that day, Maimone posted this video on her Parler social media account, named "TrumpIsYourPresident1776." *See* Figure 2 (Exhibit B).



*Figure 2*
*Screen shot from Parler video, video time 00:18, showing Maimone in Crypt*

In the lobby outside the Crypt, Vogel and Maimone talked with other rioters, and then Vogel put on his face mask. Maimone smoked a cigarette in the Lobby. *See* Figure 3 (Exhibit C).



*Figure 3*
*Screen shot from USCP CCTV Video timestamp 2:37:27 p.m., Showing Maimone (yellow circle)*
*and Vogel (red circle) Outside the Crypt*

Vogal and Maimone climbed to the second floor of the Capitol and entered a lobby between the Rotunda and East Rotunda Door. At this time, three police officers were trying to keep the Rotunda Door to the outside closed. Multiple rioters in the lobby were yelling at the officers and trying to push the Rotunda Door open. Other rioters were gathered outside the Rotunda Door. The rioters overwhelmed the police and pushed the door open, and more rioters entered the Capitol

through that door. USCP CCTV video shows Maimone and Vogel were standing near the door during this attack on police, and Maimone was filming on her cell phone. *See* Figure 4 (Ex. D). Maimone filmed the violent rioters as they pushed officers at the door and tried to take an officer's helmet. Later, Maimone posted this video online, and another individual reposted Maimone's video on Twitter. *See* Figure 5 (Exhibit E).



*Figure 4*
*Screen shot from USCP CCTV Video, timestamp 2:38:42 p.m., showing Assault on Officer at East Rotunda Door. Maimone and Vogel are circled in red.*



*Figure 5*

*Screenshot from video taken by Maimone and posted on her social media.  The video was reposted by another individual on Twitter. Video (Helmet grab assault (rioter footage).mp4, found at https://twitter.com/kyledcheney/status/1601359567954247680), (time stamp 00:09), Showing Assault on Police at East Rotunda Door*

Vogel and Maimone then turned and went up a flight of stairs to the third floor of the Capitol. Vogel and Maimone walked towards the Senate Gallery. On his way, Vogel kicked one of the office doors but did not break open the door. *See* Figure 6. Maimone continued to record a video on her cell phone.



*Figure 6*
*Screen shot from USCP CCTV Showing Vogel (circled in red) Kicking Door in Senate Hallway*
*(circled in red), and Maimone filming on her cell phone (circled in yellow)*

Vogel and Maimone each illegally took a gas mask on their way to the Senate Gallery. These 3M – SCOTT AV3000 gas masks were personal protective equipment that belonged to the U.S. Capitol Police. Each mask was valued at $260, according to the U.S. Capitol Police. Vogel and Maimone entered the hallway directly outside of the Senate Gallery, and placed the gas masks into Vogel's backpack. Another rioter approached them, also holding a stolen gas mask. Maimone aided this rioter in placing the gas mask in his backpack—giving that rioter a "thumbs up." *See* Figures 7, 8, (Exhibit F).



*Figures 7 and 8*
*Screen shots from USCP CCTV video, timestamps 2:43:34 p.m. and 2:43:47 p.m., showing Vogel (circled in red) and Maimone (circled in yellow) with Yellow Gas Masks Outside Senate Gallery*

Vogel and Maimone then entered the Senate Gallery at 2:44 p.m. *See* Figure 9. They illegally took a black duffel bag with an orange strap from under a Senate Gallery seat. The black duffel bag contained two ILC Dover CBRN30 Escape Hoods, which were personal protective equipment designed to protect the wearer from chemical agents, biological agents, nuclear or radiological particles and toxic industrial chemicals for a short period of time. Each escape hood was packaged in a silver packet and was valued at $249. The black duffel bag was valued at $28.



*Figure 9*
*Vogel and Maimone In Senate Gallery (Gettyimages)*

Two minutes later, Vogel and Maimone left the Senate Gallery. Vogel carried a silver package with an escape hood, and Maimone carried a black duffel bag with orange strap. *See* Figure 10 (Exhibit G). In the hallway, Vogel and Maimone found a black bag marked with "Police" and started rummaging through it. Maimone illegally took a second silver package containing an escape hood from the police bag. *See* Figures 11, 12. When Vogel and Maimone left the Senate Gallery hallway, each carried silver packages.





*Figures 10, 11, 12*
*Screenshots from USCP CCTV video [time stamps 2:47:35 p.m., 2:47:55 p.m. and 2:48:48 p.m.,*
*with Vogel (circled in red) and Maimone (circled in yellow) Near Senate Gallery,With Escape*
*Hoods and Police Bag*

Vogel and Maimone left the U.S. Capitol through the Senate Carriage Door at 2:50 p.m.,

carrying the stolen items they had taken from the Captiol. *See* Exhibit H, timestamps 2:50:30 –

2:40:39 p.m. They were inside the Capitol for 24 minutes.

The fair market value of the items illegally taken from the U.S. Capitol on January 6, 2021,

which are directly attributable to actions by Vogel, including two gas masks and one escape hood,

is $769.00. *See* ECF 58, ¶ 30. The fair market value of the items illegally taken from the U.S.

Capitol on January 6, 2021, which are directly attributable to actions by Maimone, including two

gas masks, one escape hood and the duffel bag, is $797.00. *See* ECF 61, ¶ 30. Vogel and Maimone

agreed to be jointly and severally responsible for restitution of the total estimated market value of $1,306.00.

*Social Media Posts*

Maimone was active on a Telegram account (display name "Red Pill"). In February 2021, her profile picture on that account showed the Capitol. *See* Figure 13.



*Figure 13*<br>*Profile of Maimone's Telegram Account, name "Red Pill"*

From November 2020 through January 2021, Maimone also had a Parler account with the username "TrumpIsYourPresident1776" and Display name: "TRUMP2020." On December 20, 2020, she added a post, "BREAKING: Trump Calls for Americans To March On DC January 6th To Stop Foreign Takeover!!!#StopTheSteal…" On December 30, 2020, she added a comment, "Nows the time to stop being stepping stones!!!! Stand up for what you believe in!! Time to get ANGRY!!!!!" On January 6, 2021, Maimone posted a video that Vogel had filmed in the Crypt with the title "Inside the capitol…" on her Parler account. *See* Exhibit B.

On January 7, 2021, Maimone posted the following comment on her Parler account in response to another user's comment:

[Other user]:   So you were illegally occupying a government building.

TRUMPISYOURPRESIDENT2020:        I'm not saying that you stupid couch potato. I'm saying I was at the government building FULL OF TYRANTS and I WATCHED A TON of patriots that were fed up with being shot at flash banged and gassed for trying to peacefully protest! AND THEY TOOK THE CAPITAL THAT IS THE HOME OF THE PEOPLE AND PAYED FOR BY THE PEOPLE!".

Likewise, Vogel made several posts on his Facebook account, "Flip Vogel" after the riots to his Facebook friends. On January 13, 2021, Vogel responded to a post on Facebook by stating "[xxx] what are you talking about??? Censor FOR WHAT??? Your advocating for them censoring a president that said to PEACEFULLY PROTEST A FRAUDULENT ELECTION??? Get the fuck out of here. You and MANY OTHERS better pray they get their shit together. If they don't you'll live to see the next revolution." A few posts later with the same individual, Vogel posted a image of Speaker Nancy Pelosi with the text overlaid that stated "We the People Insist on the Immediate Removal of Nancy Pelosi," and Vogel added the comment "IMMEDIATELY!!!" Vogel also engaged with friends on Facebook by questioning "HOW MANY LEADERS TOLD THE AMERICAN PEOPLE THEY MUST 'FIGHT TO KEEP THEIR FREEDOM' !??? Look it up you fucking FOOLS!!!"

On January 14, 2021, Vogel posted the following post on Facebook to his friends expressing support for the rioters in response to another indivdual's posts. In this post, Vogel stated: "…Remember, the ppl that allowed this bullshit election go through were in there that day. They are tyrants. These ppl took a stand against tyrants no matter where or who they were."

### *The Seach of the Defendants' Residence*

On March 17, 2021, agents executed a search warrant of Defendants' residence in Pennsylvania in conjunction with serving the arrest warrants for Defendants. Officers found a vial and bag containing a green leafy substance which was released to the local police department.

13

Maimone consented to the officers search of a shed in the back yard of the residence. Officers seized three phones and Wolverine boots during the search. No PPE was found during execution of the search warrants. Pursuant to search warrants, officers extracted data from the phones.

*The Defendants' Statements*

On August 15, 2023, Vogel and Maimone gave an interview to the government pursuant to their plea agreements. In this interview, Vogel and Maimone described the PPE they took while they were at the Capitol. They took PPE from the Capitol in part because there was gas everywhere inside and outside of the Capitol building, and others were also taking the PPE and offering it to them. However, Vogel and Maimone did not use the gas masks or escape hoods while they were at the Capitol. Instead, Vogel and Maimone took the PPE back to their home in Pennsylvania They did not show the PPE to others but did take a photo of it. About a month after the riot, Vogel and Maimone were cleaning the closet where they had stored the PPE from the Capitol. At that time, they decided to throw away all of the PPE and duffel bag. Vogel and Maimone talked with family members about the riot. Maimone posted several videos from inside the Capitol and one video from outside of the Capitol to her Parler account. During this interview, Vogel and Maimone expressed remorse for their actions on January 6.

*The Charges and Plea Agreement*

On March 12, 2021, the United States charged Vogel and Maimone by criminal complaint with Theft of Property, in violation of 18 U.S.C. § 641, Entering or Remaining in a Restricted Building or Grounds, in violation 18 U.S.C. § 1752(a)(1); Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). On March 19, 2021,

law enforcement officers arrested the defendants at their home in New Castle, Pennsylvania. After they pled guilty, Vogel and Maimone gave an interview to the government pursuant to their plea agreement.

On April 7, 2021, the United States charged Vogel and Maimone in a five-count Information with violating 18 U.S.C. §§ 641, 2, 1752(a)(1), (2) and 40 U.S.C. §§ 5104(e)(2)(D), (G). On June 2, 2023, pursuant to a plea agreement, Vogel and Maimone pled guilty to Count 1 of the Information, charging them with a violation of 18 U.S.C. § 641. By plea agreement, the defendants each agreed to pay $500 in restitution to the Architect of the Capitol. They also agreed in the plea agreement to pay restitution to the General Fund of the United States Treasury in the amount of $1,306.00 to be owed jointly and severally.

### III. Statutory Penalties

Vogel and Maimone now face a sentencing on a single count of violating 18 U.S.C. § 641. As noted by the plea agreement and the U.S. Probation Office, each defendant faces up to one year of imprisonment and a fine of up to $100,000. The defendants must also pay restitution under the terms of their plea agreements. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

### IV. The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual

sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR for each defendant. According to the PSR, the U.S. Probation Office calculated Vogel's and Maimone's adjusted offense level under the Sentencing Guidelines as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B1.1(a)) | +6 |
| Specific Offense Characteristics (U.S.S.G. §2B1.1(b)(1)(A)) | +0 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
| Total Adjusted Offense Level | +4 |

*See* Vogel's PSR at ¶¶ 53-62; Maimone's PSR at ¶¶ 53-62.

The U.S. Probation Office calculated Vogel's criminal history as a category IV. Vogel PSR at ¶ 69. As set forth in the PSR, Vogel has a significant criminal history with multiple convictions for theft and other crimes. Vogel's PSR ¶¶ 63-74. Accordingly, the U.S. Probation Office calculated Vogel's total adjusted offense level, after acceptance, at level 4, and his corresponding Guidelines imprisonment range at 2 months to 8 months. PSR at ¶ 121. Vogel's plea agreement contains an agreed-upon Guidelines' calculation that mirrors the U.S. Probation Office's calculation. ECF 57, pp. 3-5.

The U.S. Probation Office calculated Maimone's criminal history as a category I. PSR at ¶ 65. Accordingly, the U.S. Probation Office calculated Maimone's total adjusted offense level, after acceptance, at level 4, and her corresponding Guidelines imprisonment range at 0 months to 6 months. PSR at ¶ 105. Maimone's plea agreement contains an agreed-upon Guidelines' calculation that mirrors the U.S. Probation Office's calculation.  ECF 60, pp. 3-4.

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the

January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

## V.  Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of eight (8) months incarceration and twelve (12) months of supervised release, 60 hours of community service, and $1,806.00 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Vogel's and Maimone's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like Vogel and Maimone, the absence of violent or destructive acts is not a mitigating factor. Had Vogel and Maimone engaged in such conduct, they would have faced additional criminal charges.

As shown in Section I of this memorandum, Vogel's and Maimone's conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the certification vote being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional Crisis. The most important factors in Vogel's and Maimone's case is that they

17

personally stole hundreds of dollars worth of Capitol Police and Senate personal protective equipment – gas masks and escape hoods – from the Capitol; they entered the Senate Gallery; and they were in the Capitol for 24 minutes. Additionally, for Vogel, he filmed rioters in the Crypt; he observed a violent confrontation with police at the Rotunda door, and he downplayed the role of the rioters in social media posts after January 6. Additionally, for Maimone, she filmed rioters conducting a violent assault on law enforcement at the East Rotunda door, she posted multiple videos to her Parler account, including the video of the assault at the East Rotunda door and the video of her and other rioters in the Crypt; and she expressed support for the riot on social media after January 6. In mitigation, Vogel and Maimone gave a statement to the government pursuant to the plea agreement, and expressed remorse for their actions in that post-plea interview.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B.  The History and Characteristics of Defendants Vogel and Maimone

As set forth in the PSR, Vogel has a significant criminal history with multiple convictions for theft and other crimes. Vogel's PSR ¶¶ 63-74. His criminal history includes two separate 2012 felony convictions, once for Theft by Unlawful Taking (and related charge) and a second conviction for Access Device Issued to Another Who Did Not Authorize Use. In 2013, Vogel was convicted of a misdemeanor charge of Receiving Stolen Property. In 2015, he pled guilty to a Retail Theft charge. Vogel has been placed on a diversion program (ARD) and an Intermediate Punishment Program (IPP), but failed to complete those programs and was subsequently sentenced to periods of incarceration for his felony convictions. According to the PSR, Vogel is unemployed but has assisted his uncle with his RV cleaning business. *Id*. ¶ 112.

As set forth in her PSR, Maimone has no criminal history. Maimone's PSR, ¶¶ 63-69. According to the PSR, Maimone is self-employed and operates two independent businesses. Id. ¶¶ 91-92.

Vogel and Maimone accepted responsibility for their actions in a timely manner. As set forth above, Vogel and Maimone expressed remorse for their conduct on January 6 during their post-plea interview.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

In this case, a sentence of incarceration is appropriate. Vogel and Maimone entered the Capitol through the Senate Wing Doors, 13 minutes after those doors were breached by rioters, and remained in the Capitol for 24 minutes. Vogel and Maimone entered the Senate Gallery, a particularly sensitive space given its physical proximity to the certification proceedings. Unlike most misdemeanor defendants, Vogel and Maimone stole multiple gas masks and other PPE –

including an escape hood from the Senate Gallery – that were designed to protect people lawfully in the Capitol. Vogel filmed Maimone and other rioters in the Crypt, and Maimone posted the video to her Parler account. Maimone filmed a particularly violent confrontation of rioters against police at the Rotunda exterior door that she later posted, and this video was reposted on Twitter. Both defendants wore face masks much of the time when they were in the Capitol, and Vogel specifically admonished Maimone to put her mask back on because "I don't want them to see you." Outside the Crypt, Maimone smoked a cigarette. After the riots, Vogel downplayed the criminal acts at the Capitol on Facebook, instead characterizing the rioters who were arrested as "tax-paying, law abiding citizens" who "took a stand against tyrants." Vogel has a significant criminal history including felony convictions for theft, but his prior sentences failed to deter him from new criminal activity at the U.S. Capitol.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Vogel and Maimone based on their own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: participation in the January 6 riot.

Vogel and Maimone have pleaded guilty to Count 1 of the Information, charging them with Aiding and Abetting the Theft of Property, in violation of 18 U.S.C. §§ 641 and 2. This offense is

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

a Class A misdemeanor. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity.

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "As the qualifier

'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who spent time in other sensitive places within the Capitol. A defendant's entry into a sensitive space, such as the Senate Floor or a member's office, places that defendant in a more serious category of offenders than defendants who remained in hallways or central, more public spaces, such as the Rotunda. A defendant who entered a sensitive space took an extra step to occupy the Capitol and displace Congress and to display the dominance of the mob over the will of the people.

That person's presence is even more disruptive. An unauthorized individual in a private office – or the Senate Gallery in the case of Vogel and Maimone --  poses a greater threat and creates a greater impediment to members of Congress and staffers just trying to do their jobs than would a trespasser passing through a hallway.

In *United States v. Jason Riddle*, 21-cr-304 (DLF), the defendant pled guilty to misdemeanor theft and parading charges (18 USC § 641 and 40 U.S.C. § 5104(e)(2)(G)). The defendant entered the Senate Parliamentarian's office and stole the Parliamentarian's Senate Procedure book, valued at $254, and resold it outside of the Capitol building. He also stole a bottle of wine from the Senate Parliamentarian's office and drank it while other rioters were damaging the office. Judge Friedrich sentenced the defendant, who faced an agreed-upon guideline range of 0 to 6 months' incarceration, to 90 days' incarceration on the theft charge, followed by 36 months of probation on a parading charge, and ordered tht he pay restitution of $754, and perform 60 hours community service.

In *United States v. Neil Ashcraft,* 22-295 (CKK), the defendant pled guilty to one count of Theft of Government Property, in violation of 18 U.S.C. § 641, and one count of  Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). The defendant climbed the Inaugural stage and used a knife to destroy government property (a white sheet covering the scaffolding), enabling other rioters to see into and through the scaffolding. While inside the Capitol for approximately 41 minutes, he stole an American flag and flag pole, stole a water jug, kicked a door, and posed for photographs. After leaving the Capitol, he later conspired to hide and then burn the stolen flag and dispose of the stolen flag pole in a pond. Months after the FBI questioned the defendant, but prior to being charged, the defendant (accompanied by counsel) participated in a voluntary interview with the FBI and provided information about his

conduct, including conspiring to hide, burn, and destroy the flag -- information that the government did not have captured on video or in photographs; moreover, he expressed contrition during the interview and ultimately agreed to plead guilty via a pre-arrest, pre-indictment plea. The defendant faced a guideline range of 0 to 6 months' incarceration. Judge Kollar-Kotelly sentenced the defendant to 80 days of incarceration followed by 36 months of supervised release (later amended to one year of supervised release). Here, Maimone and Vogel entered the Senate Gallery; stole government property designed to keep members of Congress, their staff, citizens – and law enforcement – safe during a riot or other attack; and posted videos and commented to social media during the riot and in the days thereafter; moreover, unlike Ashcraft, Vogel has a significant prior record. Accordingly, the government's recommended sentences in this case are appropriate.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012).

## VI. Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), which "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, also applies here since the offenses of conviction include an offense against property under Title 18. *See* 18 U.S.C. § 3663A(c)(1).

caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify

a specific victim who is "directly and proximately harmed as a result of" the offense of conviction,

18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to

impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement."

*See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted

under 18 U.S.C. § 3663(a)(3), that they must each pay $500 in general restitution to the Architect

of the Capitol[5]. Vogel and Maimone further agreed to be jointly and severally responsible for

additional restitution of $1,306 for the items they stole from the Capitol. *See* Plea Agreements at

¶ 13 (ECF 57, 60). Vogel's and Maimone's restitution payment must be made to the Clerk of the

Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See*

*Id.* and Vogel PSR ¶ 146; Maimone PSR ¶ 128..

## VII.   Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these

factors, the government recommends that this Court sentence Vogel to five months' incarceration

and one year of supervised release, 60 hours of community service, and $1,806.00 in restitution.

Furthermore, the government recommends that this Court sentence Maimone to three months'

incarceration and 12 months of supervised release, 60 hours of community service, and $1,806.00

in restitution. Such a sentence protects the community, promotes respect for the law, and deters

---

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

future crime by imposing restrictions on the defendants' liberty as a consequence of their behavior, while recognizing their acceptance of responsibility for their crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  /s/ Lynnett M. Wagner
LYNNETT M. WAGNER
Assistant United States Attorney
United States Attorney's Office
Nebraska Bar No. 21606
601 D Street NW
Washington D.C. 20250
(402) 661-3700
Lynnett.m.wagner@usdoj.gov

## CERTIFICATE OF SERVICE

On this 16th day of August 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

/s/ Lynnett M. Wagner
Assistant United States Attorney